[Civil No. 4399.   Filed February 9, 1942.]

[121 Pac. (2d)  876.]

JOS. E. WHIPPLE and JOS. E. WHIPPLE LUM-
BER COMPANY, INC., a Corporation, Petition-
ers, v. THE INDUSTRIAL COMMISSION OF
ARIZONA; L. C. HOLMES, LYNN LOCKHART
and E. T. HOUSTON, Members of The Indus-
trial Commission of Arizona, and C. E. WEBB,
Respondents.

Mr. Don T. Udall and Mr. Guy Axline, for Petitioners.

Mr. Rouland W. Hill and Mr. Howard A. Twitty, for Respondents.

LOCKWOOD, C. J.—Claude E. Webb, petitioner, received an award of compensation, under the Workmen's Compensation Act, Code 1939, § 56–901 et seq., against Joseph E. Whipple, and/or Whipple & Brady, and/or The Joseph E. Whipple Lumber Company, Incorporated, respondents, for an injury arising out of and in the course of his employment. Respondents asked for a rehearing on the award, which was denied, and the matter is brought before us in the usual manner.

It is not seriously questioned that petitioner was injured in an accident arising out of and in the course of his employment, but it is most strenuously contended by respondents that his only employer was The Joseph E. Whipple Lumber Company, a corporation, and that petitioner had elected to reject the compensation act and to receive compensation for his injury under a certain insurance policy issued by the Mutual Benefit Health and Accident Association.

At the time petitioner was injured he was working in a small sawmill in northern Arizona, and while so working received a serious fracture of the arm. He was first treated there by Dr. K. A. Herbst, and afterwards sent to a hospital in Phoenix, where he was treated by Dr. J. M. Greer and Dr. Benjamin Herzberg. He made application for compensation to the Industrial Commission in the usual manner and a hearing was had. From the evidence adduced at the hearing the commission found that Joseph E. Whipple, and/or Whipple & Brady, and/or The Joseph E.

Whipple Lumber Company, Incorporated, were the employers of petitioner, and made its award accordingly.

It is the position of the commission that while the corporation was formally the employer of petitioner, as a matter of fact such corporation was merely the *alter ego* or cloak of Joseph E. Whipple and J. J. Brady, organized for the express purpose of enabling Whipple and Brady to engage in the sawmilling business without any personal liability for injuries to their employees under the compensation act.

The uncontradicted evidence of Joseph E. Whipple shows, in substance, as follows: The corporation was organized in the spring of 1939, with an authorized capital stock of some $36,000; no stock was at any time issued to any person therein, and the corporation never had any assets except at one time an equity in a truck. The entire property used by the corporation in its operations, including mill equipment and land, was the personal property of Whipple, and was leased by him to the corporation for the sum of $72 per month. The timber on which the corporation operated was obtained from the Forest Reserve under a permit issued to Whipple individually by the Forest Service, and he sold such timber to the corporation at actual cost, making no profit on the transaction. He received a salary from the corporation of about $100 per month, while Brady, who was the manager in actual charge of operations, received approximately $75 per month. These amounts, however, varied, being a percentage of what was left of the proceeds of the business after other expenses were paid. There was never any written contract with the corporation in regard to these salaries, it being just a general understanding between Whipple, Brady and the corporation, that after all the expenses

were paid the profits were split fifty-fifty. Brady owned none of the property used by the corporation.

Whenever the corporation employed anyone to work at the mill, he was told that one of the conditions of employment was that he must reject the compensation act; that the company had no property of any nature out of which compensation could be collected, and that it would secure private industrial insurance to protect the workman, the premium on such insurance to be paid half by the company and half by the workman. Some of the workmen did make a formal written rejection of the compensation act, but no such rejection was ever made by petitioner. Under these circumstances was the commission justified in finding that the corporation was merely a cloak to cover the operations of Whipple and Brady as partners or individually for the purpose of evading any liability on their part under the compensation act?

A corporation is merely a legal fiction created for the convenience of conducting business, the true human entity behind it being the stockholders who, in reality, own it and all its property, though the legal title may stand in the name of the corporation. It is now well settled as a general rule that when this fiction of the law is urged and carried on for an intent not within the reason and purpose for which it is allowed by the law, the form should be disregarded and the corporation should be considered merely as an individual or an aggregation of persons both in equity and in law. 18 C. J. S., Corporations, p. 376, § 6.

We have had questions like this before us in a number of cases, and have always followed the above rule. In the case of *Phoenix Safety Inv. Co.* v. *James,* 28 Ariz. 514, 237 Pac. 958, 959, the court said:

" . . . The courts will disregard corporate form when justice requires it to look to the substance and not to the shadow. [Citing cases.]

"The language of the court in *Minifie* v. *Rowley,* 187 Cal. 481, 202 Pac. 673, is apt:

" 'Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and vice versa, the following combination of circumstances must be made to appear: First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.'

"While most of the cases on this subject deal with the rights of creditors, we see no reason why the principle does not apply equally in any other case where justice requires it."

The same question arose in *Mosher* v. *Lee,* 32 Ariz. 560, 261 Pac. 35, and we held that the corporation referred to therein was merely a corporate form through which an individual could handle certain business, and we disregarded the form and held the individual responsible.

In *Gonzalez & Co., etc.,* v. *Thomas,* 42 Ariz. 308, 25 Pac. (2d) 552, 554, a similar question again arose, and we said:

"We have on several occasions held that a corporate entity may be disregarded when necessary to do justice. [Citing cases.] In the James case [*supra*] we said:

" 'The courts will disregard corporate form when justice requires it to look to the substance and not to the shadow.' "

Later, in *Walker* v. *Southwest Mines Development Co.,* 52 Ariz. 403, 81 Pac. (2d) 90, 95, we applied the rule to two corporations, stating:

" . . . And while it is true that the new company was in form a distinct, legal entity and that when the facts show this to be true in substance as well as in form the fiction of corporate entity should be respected, yet when it is clear that the new corporation is simply the old one clothed in a new dress and that it constitutes merely an instrumentality or conduit through which the latter intends to and does act, the legal fiction should be disregarded. . . . "

If it appears from the evidence that the corporate form was adopted merely for the purpose of allowing individuals to relieve themselves of the responsibility imposed by the public policy of the state, the corporate form will be disregarded and the individuals held responsible for the acts of the corporation.

In the very recent case of *Red Rover Copper Co.* v. *Industrial Commission,* 58 Ariz. 203, 118 Pac. (2d) 1102, 1107, referring to the compensation act we said:

" . . . The constitutional amendment and the legislation enacted thereunder declare the public policy of the state of Arizona. No contractual consent, no statute of limitations, no laches nor estoppel can prevail against public policy, and any agreements made and any acts done in violation of it are necessarily void. In view of the terms of the constitutional amendment and the Act interpreted in the light of our history, we are convinced that the election given to an employee to exercise his option must be a free and voluntary one, uninfluenced by intimidation, fraud or coercion of any nature whatsoever; that to make a rejection of the Act a condition precedent to employment is coercion, and no rejection thus obtained is, or can be made, valid. . . . "

We think under the evidence in the present case the commission was fully authorized to find that the corporation herein was the *alter ego* of a partnership composed of Whipple and Brady, organized for the purpose of evading any personal liability on their

part under the compensation act, and was fully justified in holding them individually responsible as the employers of petitioner in the present case.

The next question is as to what, if any, effect on such liability the securing of the insurance policy above referred to had. The evidence shows that it runs to petitioner and not to the employers, and that the premium was to be paid one-half by the employer and the other half by the employee. It is true there is some testimony in the record that the employers did not exercise their right of deducting from petitioner's wages any portion of the premium, but if the agreement was that such deduction could be made, the fact that it was not actually made at all cannot affect the situation. We have had a similar question before us in *Alabam Freight Lines* v. *Chateau,* 57 Ariz. 378, 114 Pac. (2d) 233, 235, under an almost identical situation, and we said:

"There was no connection, as a matter of law, between the amount which he was entitled to under the accident insurance policy and the amount which was due him as an award under the workmen's compensation law. . . . The one rested upon the workmen's compensation law and the other upon a contract between plaintiff and the insurance company for the benefit of defendant. . . . "

and we think the same rule applies to the present case.

The last objection for consideration is that on the original hearing the evidence shows that the bill of Dr. Herbst, for which an allowance was made in the award, had already been paid by respondents, so that the award would constitute a double payment, and that the other bills allowed were not presented at the hearing so that respondents had no opportunity to be heard thereon.

The only evidence in the record is to the effect that Dr. Herbst was paid in full by respondents for his

services. It also shows that while the bills of Dr. Greer and the Good Samaritan Hospital for medical attention were mentioned at the hearing they were not presented, nor was there any evidence as to their amount. It is true respondents consented, without objection, that these bills should be obtained and placed in the record for the purpose of completing it, but there was no reference to any bill of Dr. Herzberg, nor of any further bill on the part of Dr. Herbst. We think it was error for the commission to make an award in favor of Dr. Herbst on the record as made, and that respondents were entitled to a rehearing on that point, or to have the award modified by striking the allowance to Dr. Herbst therefrom.

If this were the ordinary case, we could modify the award by striking therefrom the amount of the award to Dr. Herbst, and affirm it as modified, but under the statute we can do nothing but set the award aside on account of that error, small though it may be. *Paramount Pictures, Inc.,* v. *Industrial Comm.,* 56 Ariz. 217, 106 Pac. (2d) 1024.

The award is set aside.

McALISTER and ROSS, JJ., concur.