· 421 P.2d 330

**Melvin D. LURIE et al., Appellants,**

**v.**

**ARIZONA FERTILIZER & CHEMICAL CO., et al., Appellee.**

**No. 7877.**

Supreme Court of Arizona.

In Division.

Dec. 7, 1966.

Alan Philip Bayham, Phoenix, for appellants.

John F. Goodson, Jennings, Strouss, Salmon & Trask, Phoenix, for appellee.

McFARLAND, Justice.

Appellants bring this appeal from a directed verdict and judgment against them in the lower court. Melvin Lurie, Alan Lurie, Tolbert Lurie, and Meyer Lurie, hereinafter designated the Luries, were engaged in the hotel and construction business in Washington, California, Arizona, and several other States. The Luries controlled or were the sole stockholders of over twenty separate corporations, one of which was Allied Yuma Farms, Inc., a Washington corporation licensed to do business in Arizona. Allied Yuma Farms, Inc., was engaged in farming operations in Arizona, producing primarily vegetable and truck crops. Due to harvesting difficulties with regard to a melon crop that farming operation lost money during the 1958 season.

A neighboring grower, Jay Chapman, persuaded the Luries to continue their farming activities in the area, and to enter into a joint farming venture with Arizona Desert Farms, a limited partnership with which Chapman was connected. The joint venture was formed, and it was agreed that profits and losses be shared on a 50–50 basis. Although the joint venture agreement was never reduced to writing the joint venture commenced farming during the 1959 growing season. Due to market and growing conditions, the return from the sale of the venture's farm products fell well below growing costs.

During this operation, Arizona Fertilizer and Chemical Co., hereinafter designated plaintiff, furnished $11,453.38 worth of chemical fertilizers to the joint venture on an open account. The bill was not paid,

and plaintiff brought suit against the Luries individually, and as partners in the Lurie Construction Co. Also joined as defendants were Jay Chapman and the various interests with which he was connected. As this appeal is brought solely on behalf of the defendants Luries, it is unnecessary to discuss the rather complicated structure of the Chapman interests.

At the close of the presentation of all the evidence, the trial court directed a verdict in favor of plaintiff and against the Luries individually, and as partners in the Lurie Construction Company. It is from the judgment entered on this verdict that the Luries appeal.

The Luries admit that the debt is owing to plaintiff, and that their corporation—Allied Yuma Farms, Inc.—would be liable for it. The Luries' sole contention is that they are not liable personally—or as partners. The theory on which plaintiff seeks to hold the Luries personally liable is that the contract for plaintiff's fertilizer was ultra vires as to Allied Yuma Farms, Inc., and the directors of the corporation—the Luries—should be held personally liable for their ultra vires acts.

The proposition that the contract was ultra vires is based on the corporation's actions in entering into a joint venture and into farming operations generally, where neither act was within the powers granted by the articles of incorporation.

██ Although it has not been decided in this jurisdiction, the general rule is, in the absence of statute or charter provision, that a corporation is without legal authority to enter into a partnership. Pearce v. Madison & I. R. Co., 21 How. 441, 16 L.Ed. 184; Keyes v. Nims, 43 Cal.App. 1, 184 P. 695; Indiahoma Refining Co. v. Wood (Tex.Civ.App.) 255 S.W. 212; 19 Am.Jur. 2d, Corporations, § 1047; 60 A.L.R.2d 917. A joint venture differs from a partnership principally in that while a partnership is usually formed for the transaction of a general business of a particular kind, a joint venture is usually, but not necessarily, limited to a single transaction, although the

business of conducting it may continue for a number of years. Smith v. Phlegar, 73 Ariz. 11, 236 P.2d 749; Estrella v. Suarez, 60 Ariz. 187, 134 P.2d 167; Ruby v. United Sugar Companies S. A., 56 Ariz. 535, 109 P.2d 845.

Plaintiff cites the case of Brand v. Fernandez (Tex.Civ.App.) 91 S.W.2d 932, as authority for its contention that joint ventures should be treated as partnerships insofar as the validity of corporate involvement is concerned. The Brand case found a joint-venture agreement resulting in the surrender of control of a substantial part of the corporation's assets to be invalid, reasoning that the agreement deprived the corporate officers of their elected authority. In that case, however, the corporation was a bank, and its affairs were more closely connected with the public interest than in the instant case.

The legal effect of corporate embarkation on a joint venture should be distinguished from entry into a partnership. Although the corporation may subject itself to debts other than those contracted by its directors and officers, the directors divest themselves of their sole controlling authority only as to one transaction in a joint venture, and not of the entire corporate business as in a partnership. The prevailing view is to hold corporate joint ventures valid, either directly—Luhrig Collieries Co. v. Interstate Coal and Dock Co. (D.C., N. Y.), 281 F. 265; Houston v. Dexter & Carpenter (D.C., Va.), 300 F. 354—modified—(CA 4) 20 F.2d 647, Keyes v. Nims, supra—or by implication—Ruby v. United Sugar Co. S. A., supra; Re Asiatic Exploration, Inc. (D.C., Cal.), 41 F.2d 230.

██ As applied to corporate entry into partnerships and joint ventures, the doctrine of ultra vires is designed to protect the shareholders' interest. In the instant case, the shareholders were all directors, and were cognizant of the joint venture. The entire assets of the corporation were not committed to the venture, but only a portion thereof, and the co-adventurer had no control over those assets left out of the

venture other than the power to subject them to the venture's debts. The claim of ultra vires is not being brought on behalf of the shareholders or any one with a genuine interest in the retention of director control, but by a creditor who placed no reliance on the corporate structure. The doctrine of ultra vires, and its resultant legal effect, should not be applied on this ground.

■ The other theory on which plaintiff seeks to invoke the doctrine is that the articles of incorporation of Allied Yuma Farms, Inc., do not expressly authorize the business of farming. The articles of incorporation provide for construction and management of hotels, dwellings, etc., the acquisition and sale or lease of personal and real property, and to further engage in any and all general business or activities as are permitted corporations under the laws of the State of Washington. That these articles may be more broadly interpreted under the Washington law is of no import, as Art. 14, § 5, of the constitution of Arizona, A.R.S., provides that foreign corporations may stand in no better position than Arizona corporations when doing business in Arizona.[1]

The law of Arizona relating to scope of corporate business is set out in Article 14, Sec. 4 of the constitution of Arizona, which provides:

"No corporation shall engage in any business other than that expressly authorized in its charter or by the law under which it may have been or may hereafter be organized."

This provision is implemented by A.R.S. § 10–171, which states:

"No corporation shall engage in any business other than that expressly authorized in its articles of incorporation or by the law under which it is organized."

■ These limitations were thoroughly considered by this court in Trico Electric Cooperative v. Ralston, 67 Ariz. 358, 196 P.2d 470, wherein it was held that a corporation could not lawfully contract outside the object of its creation as defined in the law of its organization. In that case, we laid down the following fundamental rules of law:

"A corporation has only such powers as are expressly or impliedly conferred by its charter. Unlike a natural person, if [sic] may not do all things not expressly or impliedly prohibited, but must draw from its charter the power to act in any given respect, and can do only that which is expressly or impliedly authorized therein. A corporate charter is the index to the objects for which it was created and to the powers with which it has been endowed. The enumeration of certain powers operates as a limitation on such objects only as are embodied therein, and is an implied prohibition of the exercise of other and distinct powers, except such incidental powers as are reasonably necessary to accomplish the purposes for which it was organized. 19 C.J.S. Corporations, §§ 935, 939, pages 369, 371; 13 Am.Jur., Corporations, secs. 739, 743, pp. 770, 776. The charter of a corporation organized under general legislation consists of the provisions of the state constitution, the particular statute under which it is organized, and all other general laws which are made applicable to the corporation formed thereunder and its articles of incorporation. 18 C.J.S., Corporations, § 43. With respect to matters to which statutes do not apply, the articles of incorporation of the corporation control and are its fundamental and organic law. 18 C.J.S. Corporations, § 43. ' * * * but in respect to those matters to which the statute does not apply the articles of incorporation govern. * * *' Orme v. Salt River Valley Water Users' Ass'n, 25 Ariz. 324, 217 P. 935, 941. See also Norwegian Old Peo-

1. Constitution of Arizona, Art. 14, § 5: "No corporation organized outside of the limits of this State shall be allowed to transact business within this State on more favorable conditions than are prescribed by law for similar corporations organized under the laws of this State; * * *"

ple's Home Soc. v. Willson, 176 Ill. 94, 52 N.E. 41." 67 Ariz. at 366, 196 P.2d at 475

■ Although the Luries argue that farming may be necessarily incident to the charter power to acquire and sell real property, they do not contend that this property was held for resale or that it was acquired for a valid charter purpose. In the absence of any evidence showing farming to be an incidental business reasonably necessary under the charter powers, we find the farming transaction and the contract for fertilizer which arose from it to be ultra vires.

The contract being ultra vires, it is plaintiff's contention, and presumably the theory on which the trial court granted the directed verdict, that the Luries should be personally liable as directors. The proposition that the directors will be held personally liable for acts done in behalf of the corporation which were outside of its charter powers finds support in the case of Mandeville v. Courtright, 3 Cir., 142 F. 97, 6 L.R.A.,N.S., 1003, cert. denied Mayer v. Mandeville, 202 U.S. 615, 26 S.Ct. 764, 50 L.Ed. 1172. In that case, the corporation was incorporated in New Jersey, and practiced dentistry in Pennsylvania under the corporate name. The corporation was forbidden by Pennsylvania law to so practice. The plaintiff was a dental patient who was injured by improper treatment. The Circuit Court of Appeals, 3d Circuit, held the directors and managing officers liable for the tortious acts of their agents, reasoning that the directors could not act under the guise of their corporate entity when that corporation could not conduct such a business and they knew it.

In the instant case, Allied Yuma Farms, Inc., was not permitted to carry on farming operations nor to enter into the fertilizer contract under the law of Arizona as implemented by the corporate charter. There were only four stockholders, all of whom were directors in the corporation and knew the nature of the business in which the corporation was engaged. The corporation was undercapitalized, and funds were diverted to it from other Lurie corporations and the Lurie partnership, as needed. The corporation had no separate offices, no stationery, and little other outward indicia of corporate existence. These facts tend to point up to the conclusion that the corporation was merely a means of avoiding personal liability while using the financial standing and good will of the Luries as individuals in their dealings with others.

Plaintiff did not know the Luries intended to engage in the joint venture solely through their corporation, and was led to believe by Chapman that they were acting as individuals. It was never made clear to their co-adventurers that the Luries intended to act only as a corporation, as the venture agreement was not reduced to writing, and it was only after the venture had failed and the liabilities accrued that the corporate entity was brought out.

The question then is whether this ultra vires act is binding on the Luries personally. The result is, in effect, a piercing of the corporate veil.

In Whipple v. Industrial Commission, 59 Ariz. 1, 121 P.2d 876, Whipple and Brady, as partners, or individually, sought by the use of a corporation to evade any liability on their part under the compensation act. In holding them individually liable, we said:

"A corporation is merely a legal fiction created for the convenience of conducting business, the true human entity behind it being the stockholders who, in reality, own it and all its property, though the legal title may stand in the name of the corporation. It is now well settled as a general rule that when this fiction of the law is urged and carried on for an intent not within the reason and purpose for which it is allowed by the law, the form should be disregarded and the corporation should be considered merely as an individual or an aggregation of persons both in equity and in law. 18 C.J.S., Corporations, p. 376, § 6." 59 Ariz. at 5, 121 P.2d at 877, 878

The leading case of Wenban Estate, Inc. v. Hewlett, 193 Cal. 675, 227 P. 723, states the rule as follows:

> "While it is the general rule that a corporation is an entity separate and distinct from its stockholders, with separate, distinct liabilities and obligations, nevertheless there is a well-recognized and firmly settled exception to this general rule, that, when necessary to redress fraud, protect the rights of third persons, or prevent a palpable injustice, the law and equity will intervene and cast aside the legal fiction of independent corporate existence, as distinguished from those who hold and own the corporate capital stock, and deal with the corporation and stockholders as identical entities with identical duties and obligations." 227 P. at 731

The facts in the instant case are similar in many respects to the facts in Whipple v. Industrial Commission, supra. In the instant case, Alan Lurie stated in his deposition:

> "There might have been a tax reason but basically I would say that is the reason, so that if the crops lost the money the corporation would be stuck with the bill and we wouldn't have to pick it up personally.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "We didn't want to be personally responsible for anything."

The Luries, in this ultra vires act, were attempting to use the corporation to make money as individuals without incurring individual liability, as stated above. In the Whipple v. Industrial Commission case, Whipple and Brady were attempting to make money in the sawmill business without the liability imposed by statute under the compensation act. As set forth herein, the acts of the Luries were ultra vires in that they were not within the reason and purpose for which the corporation was ostensibly formed and were clearly for the purpose of their own personal benefit. In the light of the Luries' total disregard of the corporate entity, both in their actions and representations in conducting this venture, and in disregard of the charter which they now attempt to stand behind, the law and equity must intervene to protect the rights of third persons as the corporate fiction has been urged to an extent not within its reason and purpose. Whipple v. Industrial Commission, supra; Wenban Estate, Inc., v. Hewlett, supra.

█ These considerations, taken in conjunction with the premise that the Luries were bound by law to know the invalidity of their ultra vires transactions, prohibited by the law of the corporation which they now attempt to stand behind, are sufficient to warrant the personal liability imposed by the trial court.

Judgment affirmed.

STRUCKMEYER, C. J., and UDALL, J., concur.