446 P.2d 934

**KITCHELL CORPORATION, a corporation,
Appellant,**

v.

**John HERMANSEN and Norma Jean Hermansen, husband and wife, Martin Horwitz and Shirley Horwitz, husband and wife, Appellees.**

**No. I CA–CIV 712.**

Court of Appeals of Arizona.

Nov. 12, 1968.

Rehearing Denied Dec. 17, 1968.

Review Denied Feb. 4, 1969.

Carson, Messinger, Elliott, Laughlin & Ragan, by Robert W. Holland, Phoenix, for appellant.

Allen L. Feinstein, Phoenix, for appellees Hermansen.

Kramer, Roche, Burch, Streich & Cracchiolo, by Daniel Cracchiolo, Phoenix, for appellees Horwitz.

DONOFRIO, Judge.

This action was commenced by the appellant, Kitchell Corporation, to recover on a promissory note. The appellant received judgment against Arizona-Utah Investment Company, a limited partnership, and against the persons who were their assignors. The court ordered that appellant take nothing on its claim against Hermansen and Horwitz and Co., a corporation, and denied recovery against Hermansen and Horwitz individually. This appeal is from only that part of the judgment in favor of defendants-appellees Hermansen and Horwitz individually.

A note for commission earned by Mr. Bennett and Mr. Bradley in a real estate transaction was signed in the following manner:

ARIZONA - UTAH INVESTMENT COMPANY, a limited partnership, by Hermansen and Horwitz and Company, General Partners.

/s/ John Hermansen

John Hermansen, President

/s/ Martin Horwitz

Martin Horwitz, Vice President"

Subsequently Bennett and Bradley negotiated the note to Kitchell Corporation at a discount, with the transaction being han-

**426**

dled through an escrow agent. Kitchell Corporation was not a party to the original real estate transaction. Kitchell is now attempting to hold Hermansen and Horwitz personally liable on this note.

■ A limited partnership is formed by complying with Section 2 of the Uniform Limited Partnership Act, A.R.S. § 29–302. The management of the business in a limited partnership is denied to the limited partners, and is vested almost entirely in the general partners. Section 7 of the Uniform Limited Partnership Act, A.R.S. § 29–307; Section 9 of the Uniform Limited Partnership Act, A.R.S. § 29–309. The general partner has the rights, powers, duties and liabilities as those of a partner in an ordinary partnership. In other words, the general partner may become individually liable for all of the debts of the partnership. Crane on Partnership, Second Edition, 1952, Section 26. The creditor, Kitchell Corporation, is attempting to collect from Hermansen and Horwitz individually, urging that they are the general partners of Arizona-Utah Land Investment Company.

■ The question now becomes, can a corporation be a general partner of a limited partnership? Absent express statutory or charter authority, a corporation cannot enter into a partnership either with individuals or other corporations. Rowley on Partnership, Second Ed., 1960, Sec. 6.4 H 1; 68 C.J.S. Partnership § 5 b. As far as Arizona is concerned, there are statutory provisions permitting a corporation to become a partner in an ordinary partnership agreement. A.R.S. §§ 29–202, 29–206. There are, however, no such provisions in the Uniform Limited Partnership Act, A.R.S. § 29–301 to 329. There is a provision which states that:

"In any case not provided for in this article the rules of law and equity, including the law merchant, shall govern." A.R.S. § 29–329.

■ Was the activity of the Hermansen and Horwitz Corporation ultra vires, and if so, should these persons be held individually liable? We think not. It would not be unreasonable to find that a corporation may act as a general partner in a limited partnership. It was so held in Texas:

"The Uniform Limited Partnership Act used the word 'person' or 'persons' and there is no language in such Act excluding a corporation from the meaning of the word 'person' as used in the Act, therefore, we hold that a corporation legally qualified under appropriate statutory provisions to act as a trustee may enter into a limited partnership organized to carry out a lawful purpose. * * *" Port Arthur Trust Co. v. Muldrow, 155 Tex. 612, 291 S.W.2d 312, 60 A.L.R.2d 913 (1956).

While this case may be limited to a trust company acting as trustee of an express trust, we think that the better rule should not limit corporate activity and liability in limited partnerships to a trustee situation. The reasons for the original rule, as pointed out in 60 A.L.R.2d 913 were:

1. That the mutual agency between partners would be inconsistent with the control of the corporation by its stockholders; or,

2. That such an arrangement improperly allowed corporate property to become subject to risks not contemplated by the stockholders when they originally invested in the corporation.

If our legislature felt that such dangers were not great in a general partnership, as evidenced by A.R.S. § 29–202 and § 29–206, the danger is even less great in a limited partnership where the corporation is the only general partner. In this case only the corporation could manage the limited partnership, leaving almost complete control in the hands of the corporate shareholders.

■ Even if the acts of Hermansen and Horwitz Corporation were futile, the plaintiff in this case could not use the doctrine of ultra vires in Arizona to collect from Hermansen and Horwitz individually.

"As applied to corporate entry into partnerships and joint ventures, the doctrine of ultra vires is designed to protect the shareholders' interest * * *. The claim of ultra vires is not being brought on behalf of the shareholders or any one with a genuine interest in retention of director control, but by a creditor who placed no reliance upon the corporate structure. The doctrine of ultra vires, and its resultant legal effect, should not be applied on this ground." Lurie v. Arizona Fertilizer and Chemical Co., 101 Ariz. 482, 484–485, 421 P.2d 330, 332 (1966).

In Lurie the directors of the corporation were found individually liable on a different theory, the theory of piercing the corporate veil. The creditor in that case was led to believe that the shareholders were acting as individuals. It was only after the venture had failed and liabilities accrued that the corporate entity was brought out.

■ Mr. John Austin was the only agent, employee or officer of Kitchell Corporation to testify in this case. He did not testify to any reliance by Kitchell Corporation on the individual liability of Hermansen or Horwitz when Kitchell originally bought the note from Bennett and Bradley.

■ We agree with appellant that A.R.S. § 29–216 may estop a person from denying that he was acting as a general partner of a company rather than as an officer of a corporation. When it is contended that such a thing has occurred, the question is whether his actions and conduct were sufficient to lead a creditor to believe that the debtor was acting as an ostensible copartner, and whether he was assuming responsibility as such. This is an issue of fact for the trial court to determine from all of the evidence presented. J. & J. Builders Supply v. Caffin, 248 Cal. App.2d 292, 56 Cal.Rptr. 365 (1967). Under this doctrine of partnership by estoppel, it is essential that the party asserting liability must show that acting as a reasonable man he was induced by misleading appearances to change his position to his detriment. Wisconsin Telephone Company v. Lehmann, 274 Wis. 331, 80 N.W.2d 267 (1957).

As pointed out above, there was no evidence other than the note itself which shows that the appellees induced or misled the appellant into changing its position to its detriment. There was no evidence at all which shows any mistaken impression by the appellant.

■ The fundamental purpose of a group of business persons incorporating is that a corporation has an existence distinct from the persons composing it. Our laws permit a corporation, as a separate legal entity, to act on its own account through organs of activity called directors, officers, agents, etc. Hermansen and Horwitz and Company has met all the constitutional and statutory requirements of a corporation. As a corporation it may be a disclosed principal on whose behalf its president and vice president may execute a negotiable instrument without personal liability if the requirements of the state negotiable instruments law have been met.

■ ▪ Under the Uniform Negotiable Instruments Law, Sec. 20, A.R.S. § 44–420, when the corporate name is followed by the name of a corporate officer who affixes his corporate title to his name, such a signature makes the corporation, not the individual, liable. Budelman v. White's Express & Transfer Co., 49 N.J.Super. 511, 140 A.2d 552 (1958). It is incumbent upon the court to look at the facts of each case to determine if the original parties intended that the negotiable instrument would be signed in a representative capacity, and if so, would some third-party holder in due course be misled into thinking that the individual and not the corporation was to be liable.

■ In the instant case the trial court permitted parol evidence that the execution of the note by the defendants was intended to be as officers of Hermansen and Horwitz and Company, a corporation. The court was correct in doing this. We believe that a clear statement of the law in this

area can be found in Receivables Finance Corporation v. Hamilton, (Mo.1966), 408 S.W.2d 44:

"If one signs or endorses an instrument in his individual name, and adds merely a descriptive term or title after his name, such as 'Pres.,' 'Sec'y.,' 'Trustee,' etc., without disclosure of the principal for whom (or which) he is thus acting, he is liable personally, and the addition is merely 'descriptio personae.' (cases cited). In such cases it is generally held that parol evidence is not admissible to establish the fact that only a corporate liability was intended.

"Some courts have held, on signatures of widely varying types, that the instruments were ambiguous, and that parol evidence should be admitted to ascertain the real intent of the parties. (cases cited) But it is very generally held that, in order to create such an ambiguity, there must be something more than the mere addition of abbreviations such as 'Pres.,' 'Sec'y.,' or 'Treas.,' and usually the corporate name must appear in some manner on the instrument itself in order to permit such evidence. * * *" 408 S.W.2d at page 46.

The name typed on the note was "HERMANSEN AND HORWITZ AND COMPANY", whereas the correct name filed with the Corporation Commission is "HERMANSEN, HORWITZ & CO., Real Estate Investments, Inc." The president of the company, Mr. Hermansen, testified that the company used the name "HERMANSEN, HORWITZ AND COMPANY" in conducting its business.

 A corporation may do its business under an assumed or trade name. 6 Fletcher Cyclopedia Corporations, § 2442.1 (1968); 56 A.L.R. 451 (1928). It may acquire this fictitious name by either use or reputation. B. Di Medio & Sons, Inc. v. Camden Lumber & Millwork Co., 23 N.J.Super 365, 93 A.2d 45 (1952). The validity of a contract entered into by a corporation under a name other than its incorporated name does not depend upon whether the name is known to be fictitious, but upon whether the name is used in good faith by the party adopting it. William Gilligan Co. v. Casey, 205 Mass. 26, 91 N.E. 124 (1910); 6 Fletcher, supra, § 2442.1.

The appellant objects to the form and sufficiency of the findings of fact and conclusions of law. The rule in Arizona was aptly pointed out in Gilliland v. Rodiquez, 77 Ariz. 163, 268 P.2d 334 (1954):

"A court is called upon to make findings of only ultimate facts and is not required to bolster them by subsidiary findings on evidentiary matters upon which such ultimate facts are based, McGee v. Nee, 8 Cir., 113 F.2d 543, and if there is competent evidence of the existence of such facts, and they are such that this court is able to test the validity of the judgment, the trial court has met its obligation under the provisions of Rule 52(a), Rules of Civil Procedure, section 21–1028 A.C.A. 1939. The ultimate test of the adequacy thereof is whether they are pertinent to the issues and comprehensive enough to provide a basis for the decision. * * *" 77 Ariz. at page 167, 268 P.2d at page 337.

 In this case the trial court found that John Hermansen and Martin Horwitz executed the note in a representative capacity, and that Hermansen and Horwitz and Company is a corporation and not a partnership. We hold that such a finding was supported by the facts and satisfies appellees' position that they complied with the Arizona Negotiable Instruments Law.

Judgment affirmed.

STEVENS, J., and MARY ANNE RICHEY, Judge of Superior Court, concur.

NOTE: Chief Judge JAMES DUKE CAMERON, having requested that he be relieved from consideration of this matter, Judge MARY ANNE RICHEY was called to sit in his stead and participate in the determination of this decision.