**Neil G. DELANEY, Jr., et al., Appellants,**

v.

**FIDELITY LEASE LIMITED et al.,
Appellees.**

**No. 6370.**

Court of Civil Appeals of Texas,
El Paso.

Nov. 27, 1974.

Rehearing Denied Jan. 8, 1975.

Webb & Stokes, Tom Webb, Gray, Aaron & Dorsey, Donald P. Dorsey, San Angelo, Kronzer, Abraham & Watkins, W. James Kronzer, Houston, for appellants.

Edwards, Belk, Hunter & Kerr, Frank H. Hunter, Kemp, Smith, White, Duncan & Hammond, Joe Lea, Jr., Jim Curtis, El Paso, for appellees.

## OPINION

WARD, Justice.

This is a suit by a landlord for damages for breach of a lease contract with the defendants being the lessee, Fidelity Lease Limited, a limited partnership, Interlease Corporation, which is a corporation and the only general partner of Fidelity Lease Limited, and the twenty-two limited partners of Fidelity Lease Limited. The suit also seeks to hold certain of the limited partners personally liable as general partners. The trial Court granted summary judgment in favor of the limited partners in a severed cause in which all limited partners appear only as to their personal liability. The appeal concerns the question whether a limited partner in a limited partnership becomes liable as a general partner when he also participates as an active officer, director and shareholder of a corporation which is the sole general partner of the limited partnership. We affirm the judgment of the trial Court which held that the limited partner did not become liable as a general partner solely because of his participating in the affairs of the corporation as an officer, director or stockholder.

Fidelity Lease Limited is a limited partnership organized under the Statutes of the State of Texas. The general partner within Fidelity Lease Limited is Interlease Corporation, a Texas corporation. Among the limited partners of Fidelity Lease Lim-

ited were W. S. Crombie, Jr., William Sanders and Alan Kahn, who were also respectively the active President, Vice-President and Treasurer, as well as directors and stockholders of Interlease Corporation, the general partner of the limited partnership. In February of 1969, the plaintiffs, as lessor, entered into the lease with "FIDELITY LEASE, LTD., a limited partnership acting by and through INTERLEASE CORPORATION, General Partner, * * * hereinafter called 'LESSEE,' * * *." The lease was executed by the lessee, Fidelity Lease, Ltd., by the General Partner, Interlease Corporation, by W. S. Crombie, Jr., President. The acknowledgment to the lease is by W. S. Crombie, Jr., as President of Interlease Corporation, who acknowledged to the notary that the same was the act of said Interlease Corporation and that he executed the same as the act of the corporation and in the capacity therein stated.

The lessors proceeded to erect on the premises a fast food service restaurant as called for by the lease and it is the plaintiffs' contention that thereafter Fidelity Lease Limited failed to take possession of the premises as required and has paid none of the rental thereon. The suit for the breach of the lease joins as defendants the limited partnership of Fidelity Lease Limited, its general partner Interlease Corporation, and all of its limited partners among whom appear W. S. Crombie, Jr., Alan Kahn and William Sanders. Personal liability at least to these three individuals is asserted under Art. 6132a, Sec. 8, Tex.Rev.Civ.Stat.Ann., and it is alleged that these three limited partners have become liable as general partners because they had participated in the management and control of the business of the limited partnership.

 Both plaintiffs and the defendants filed motions for summary judgment. Summary judgment proof consisted of certified copies of the Articles of Incorporation of Interlease Corporation and of the Certificate of Formation of the limited partnership, Fidelity Lease, Ltd., the depositions of W. S. Crombie, Jr., Wm. D. Sanders and Alan R. Kahn, and affidavits of many of the limited partners. It was upon the plaintiffs' own motion that the cause of action was severed insofar as the limited partners appeared individually as defendants in their personal capacities and in their personal liabilities. The defendants' motion for partial summary judgment was then granted in favor of the limited partners of Fidelity Lease Limited, so far as the limited partners appear in their personal capacities and liabilities and they were ordered dismissed. The plaintiffs' motion for partial summary judgment was also overruled. It is from this order of the trial Court that the plaintiffs now appeal. Regardless of how novel the granting of the severance was in this case, it was within the judicial power of the Court to determine that the cause was severable and to sever the same. The judgment which fully adjudicated this one severed cause was final, became appealable, and is properly before us. Pierce v. Reynolds, 160 Tex. 198, 329 S.W.2d 76 (1959), at 78.

By moving for the severance and by narrowing the point in their brief, the Appellants have sought an immediate answer to the inquiry which may well determine the entire controversy, i. e., individual liability of the three named limited partners. This one point presented to us on this appeal is to the effect that the trial Court erred in granting the motion for summary judgment "because there exists a genuine material issue of mixed fact and law as to whether the limited partners W. S. Crombie, Jr., William Sanders and Alan Kahn participated in the management and control of the business of Fidelity Lease Limited to the extent necessary to impose personal liability upon them, and the ruling of the trial court constituted an incorrect conclusion of law to the effect that such participation in the management and control of the business of the limited partnership by Appellees in their respective capacities within the corporate general partner does not subject them individually to liabil-

ity as general partners pursuant to Article 6132a, Sec. 8 [Vernon's Ann.Civ.St.] * * *." An examination of the entire record reveals that the trial Court granted the summary judgment only upon the matter contained in the Appellants' one point. As to the nineteen other limited partners who were also dismissed in the severed cause of action no complaint is now made. Judgment in that severed cause of action as to those nineteen individuals is now affirmed.

 It is permissible in this State to form a limited partnership where a corporation is the only general partner, provided that the purpose to be carried out by the limited partnership is lawful. Port Arthur Trust Company v. Muldrow, 155 Tex. 612, 291 S.W.2d 312 (1956); 19 Hamilton, Texas Business Organizations § 212, p. 196. While the Port Arthur Trust Company case had before it only the question of the corporation entering the limited partnership as a limited partner, the Court in no uncertain language decided that a corporation was a "person" within the meaning of Art. 6132a and placed no restriction as to a corporation entering the limited partnership as a general partner. There is no logical reason why it can not, and since that opinion the Secretary of State has accepted the corporate general partner in the limited partnership. 24 Sw.L.J. 285. The Texas Uniform Limited Partnership Act, Art. 6132a, Tex.Rev.Civ.Stat.Ann., provides for the formation and operation of limited partnerships. Generally, the limited partnership is a business form intermediate between a partnership and a corporation. It consists of general partners who have all the rights, duties and obligations of partners in an ordinary partnership and limited partners whose positions are somewhat akin to shareholders in a corporation. The general partners conduct the business and are personally liable to creditors. The liability of limited partners on the partnership obligations is limited to the amount of their contributions. They do not participate in management of the limited part-

nership on pain of losing their limited liability. 19 Hamilton, Texas Business Organizations § 211. It is the extent of the reach of the prohibition contained in the Statute that determines this appeal. Art. 6132a, Sec. 8, states "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." If the language of this Statute is all controlling in importance then the Appellants are correct and the three questioned limited partners have become personally liable to the creditors of the limited partnership.

 On the other hand, if this dispute is approached from our basic notions of corporations, then no liability exists. In corporate law, it is fundamental that the shareholder, officer or director is ordinarily protected from personal liability arising from the activities of the corporation. "This insulation from personal liability is said to be the natural consequence of the incorporation process, and is supported by the theory or 'fiction' that incorporation results in the creation of an 'entity' separate and distinct from the individual shareholders." Sutton v. Reagan & Gee, 405 S.W.2d 828 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.). From this corporate viewpoint, limited liability is the rule rather than the exception. It is only in the exceptional situation where a court will "pierce the corporate veil" or where some of the other well-known adjectives are used to describe the process calling for the creation of personal liability. Some six exceptions are described in Pacific American Gasoline Co. of Texas v. Miller, 76 S.W.2d 833 (Tex.Civ.App.—Amarillo 1934, writ ref'd), and one of the exceptions might be urged here, i. e., the corporate structure is being used as a vehicle for circumventing the terms of Art. 6132a, Sec. 8.

Professor Hamilton, in his work at § 234, makes an analysis of the problem and he argues strongly against the creation of any personal liability where the facts are similar to those that are now before us.

Where there has been a voluntary dealing between businessmen which has resulted in the execution of a contract, the plaintiff has dealt in some way with the corporation and should be aware that the corporation lacks substance. In the absence of some sort of deception, the creditor more or less assumes the risk of loss when he deals with the corporate "shell." If he were concerned, he should have insisted that some solvent third person guarantee the performance by the corporation.

"In contract cases the separate existence of a minimally capitalized corporation should usually be recognized. * * * if a person knowingly deals with an under-capitalized corporation he is, in effect, assuming the risk of loss if the transaction does not work out. If the person does not wish to take this risk, he should insist that the shareholders themselves enter into the contract or personally guarantee performance by the corporation. Indeed, transactions are often entered into in the name of a shell corporation precisely because the shareholders do not wish to assume personal liability. * * * When the parties themselves are apportioning the risk of loss through their relative bargaining power, there is no reason for a court to disturb this allocation of risk." Hamilton, supra, pp. 228–229. The leading Texas Supreme Court case that reflects this attitude is Bell Oil & Gas Company v. Allied Chemical Corporation, 431 S.W.2d 336 (Tex.1968).

As far as we or the parties have determined the point before us is of first impression. Certain cases in other jurisdictions have passed on statutes identical to our § 8 of our Limited Partnership Act. The case of Holzman v. DeEscamilla, 86 Cal.App.2d 858, 195 P.2d 833 (4th Dist., 1948), is the leading case where a court imposed general liability on limited partners because of their participation in the control of the business of truck farming. The limited partners directed which crops were to be planted, signed the partnership checks without the consent of the general partner, required the general partner to re-

sign as manager, and secured his successor. The Court held that the activities clearly showed that they took part in the control of the business and became liable as general partners.

In certain other cases, the courts have refused to impose general liability on the limited partners merely because they had an interest and did participate to a limited extent in the affairs of the partnership. In Silvola v. Rowlett, 129 Colo. 522, 272 P.2d 287 (1954), the limited partner, as foreman in the repair shop of an automobile sales company, merely by making suggestions and expressing opinions as to the advisability of transactions, did not become liable as a general partner. In Rathke v. Griffith, 36 Wash.2d 394, 218 P.2d 757 (1950), the limited partner was named to the board of directors of the limited partnership. He never functioned as a director and because of his lack of actual participation and control was held not liable as a general partner. Two other cases have held that the lack of actual participation in the management and control did not create any general liability regardless of certain limited activities in the partnership. Plasteel Products Corporation v. Helman, 271 F.2d 354 (1st Cir. 1950); Grainger v. Antoyan, 48 Cal.2d 805, 313 P.2d 848 (1957). One case does touch somewhat upon the problem. That is, Bergeson v. Life Insurance Corporation of America, 170 F.Supp. 150 (D.Utah 1958), modified 265 F.2d 227 (10th Cir. 1959), cert. denied, 360 U.S. 932, 79 S.Ct. 1452, 3 L.Ed.2d 1545. There the limited partnership was formed for the sole purpose of organizing and owning a corporation and the limited partners became directors of the corporation and therefore participated in the management. One alternative reason advanced by the trial Court for holding general liability was the terms of the statute on control. That case can well be limited to its facts as there was considerable evidence of fraudulent conduct on the part of the participants in the business. Regardless, the point was not passed on by the Circuit Court of Appeals.

These cases do not attempt to state a general standard for determining when the control test is met and are limited to their specific facts. One writer points out that no satisfactory standard of "control" has ever been enunciated though the Uniform Limited Partnership Act is over fifty years old. He suggests that the Act itself is due for an overhaul which would clarify the meaning of the control test. Alan Feldt, 82 Harvard L.Rev. 1471.

■ Admittedly, the decision in the case before us is not free from doubt. The logical reason to hold a limited partner to general liability under the control prohibition of the Statute is to prevent third parties from mistakenly assuming that the limited partner is a general partner and to rely on his general liability. However, it is hard to believe that a creditor would be deceived where he knowingly deals with a general partner which is a corporation. That in itself is a creature specifically devised to limit liability. The fact that certain limited partners are stockholders, directors or officers of the corporation is beside the point where the creditor is not deceived. The evidence is that the three limited partners did not control Fidelity Lease Limited. It was controlled by its sole general partner, the corporate entity of Interlease Corporation.

While we affirm this case upon the affidavits and depositions of interested parties, we feel their evidence is clear, direct and positive and that there are no circumstances in evidence tending to discredit or impeach them. The Appellants have not attempted in any way to controvert them. Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41 (Tex.1965).

■ The affidavits of the limited partners do contain conclusions, but no complaint is made in the Appellants' point or anywhere in their brief as to any such defect in the summary judgment proof. That must be done either by raising the complaint in a separate point or as a ground of argument under a general point. Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119 (Tex.1970). The dissent urges the use of conclusions as one base for reversal. Since the Appellants fail to complain, we should not advance the principle of fundamental error to protect them for their unassigned error, which is in no way fundamental error. McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957).

The trial Court is affirmed.

PRESLAR, Chief Justice (dissenting).

I respectfully dissent and would reverse and remand the summary judgment as to the Appellees Crombie, Sanders and Kahn only. The basic setup here is that we have some twenty-two limited partners. Three of those limited partners formed themselves into a corporation to be the general partner under the Texas Uniform Limited Partnership Act. Art. 6132a, Tex.Rev.Civ.Stat.Ann. As noted by the majority, this Act provides for both a general partner and a limited partner or partners, and the first question which must be determined here is whether or not a corporation can be the general partner. I am unable to agree with the majority that a corporation can be a general partner. The general rule in most jurisdictions and in Texas is that a corporation cannot be a partner. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716 (1945). The case of Port Arthur Trust Company v. Muldrow, 291 S.W.2d 312 (Tex.1956), annotated in 60 A.L.R.2d 913, cited by the majority, is the only decision my research has found which holds that a corporation can be a partner under the Limited Partnership Act. That case differs from the one before us in a very important respect, which is, that there the corporation was a limited partner whereas here the corporation acts as the general partner. In that case, it was recognized that as a general rule a corporation may not enter into a partnership because such action is against public policy. The

Court's reasoning in excepting the case from the general rule is subject to question, since the corporation was the limited partner which would make it subject to the control of the general partner. Yet, the Court said that reasons for the general rule would not apply to the case before it since the corporation would be a limited partner and as such it would have no control except over its own assets. In the case before us, the corporation is the general partner, yet, being created solely to operate the partnership, it must be directed to that end rather than any corporate purpose. The directors and officers are placed in conflicting positions here, in that as such officers and directors of the corporation they owe a duty to the corporation, while at the same time as the general partner they owe a duty to act in the interest of the limited partnership. The rule of law is well established that a general partner is bound in fiduciary relationship with the limited partners. McGlynn v. Schultz, 90 N.J.Super. 505, 218 A.2d 408 (1966), affirmed 95 N.J.Super. 412, 231 A.2d 386 (1967). The Texas Uniform Limited Partnership Act provides that two or more "persons" may form a limited partnership and in the Port Arthur case it was held that "persons" included a corporation. This is a general rule of construction where a statute does not provide otherwise, but I feel that it has no application here because the Statute does provide otherwise as to a general partner because by Sec. 21 thereof it has a special provision that the partnership is dissolved upon the "retirement, death or insanity of a general partner." These being things which do not happen to corporations and there being absolutely no mention of corporations anywhere in the entire Act, I would not construe "persons" to include a corporation as a general partner. It is my conclusion that a corporation may not be a general partner under the Act and particularly where, as here, it is not an independent corporation but is composed entirely of limited partners. It would seem to present conflicts and be against public policy.

If we assume that a corporation composed of limited partners can be a general partner in a limited partnership, we then reach the question of whether the three Appellees here involved exercised such control through the corporation as made them liable as general partners. Unlike the cases cited by the majority, the question is not one of the degree of control exercised, for it is undisputed that they exercised full control. The evidence is that the corporation was created for the sole purpose of operating the limited partnership. Here, the Appellees were in full and complete control and the question is whether that exercise of control fails to make them general partners for the reason that it was done through a corporation. The fiction of the corporate entity has its place and purpose, but I cannot believe that it was intended to be used in the Limited Partnership Act in the manner here employed. The Act provides great benefits to the business world and the businessman but it also provides for corresponding liability. That liability is evaded or diminished by the plan here brought forth by ingenious businessmen. Under this plan, the liable general partner could be a corporation with assets of $1,000.00, which would operate a limited partnership of millions of dollars. The Act definitely requires liability and responsibility in that it provides for a general partner. I would not neutralize that portion of the Act by affirming the judgment before us. Appellees are saying that they did not exercise control over the partnership—that the corporation did. I find it difficult to separate their acts for they were at all times in the dual capacity of limited partners and officers of the corporation. Apparently the corporation had no function except to operate the limited partnership and Appellees were obligated to their other partners to so operate the corporation as to benefit the partnership. Each act was done then, not for the corporation, but for the partnership. Indirectly, if not directly, they were exercising control over the partnership. Truly "the corporation fiction" was in this instance a fic-

tion. This being a summary judgment case in which the burden of proof was on Appellees to sustain their defense, I would hold that they have not met that burden. The summary judgment evidence before the Court was the affidavits and the depositions of the defendants here involved. In their affidavits, the Appellees stated that they had invested money in the limited partnership, that such investment was the extent of their participation, that Interlease Corporation, as the sole general partner of Fidelity, handled all of the business of Fidelity, and that none of the limited partners in any way participated in the operations of the partnership. It is clear that these affidavits contained mere conclusions and thus they are not competent evidence to support the summary judgment. Hidalgo v. Surety Savings and Loan Association, 487 S.W.2d 702 (Tex.1972). Clearly, a fact question is present and thus Appellees fail to prove their defense as a matter of law and the summary judgment should be reversed.

OSBORN, Justice (concurring).

I concur. This being a case of first impression, there is little other than accepted general rules to apply. This has been done. While it can be claimed that iniquities may result in permitting a corporation to be the only general partner in a limited partnership, one who knows he is dealing with a limited partnership, and knows the general partner is a corporation, must necessarily be aware of the limited exposure of the entity with which he deals and that recovery of debts may well be limited by the assets of the corporate general partner with whom he deals. But the same thing must necessarily be said about dealing with an individual as the general partner. In this case, the Appellants knew that they were entering into a lease agreement with a limited partnership and that a corporation was the general partner. There is no claim of fraud, misrepresentation or mistake in this regard. The contention is that hindsight shows it to have been a "bad deal" for which Appellants now seek personal liability against those from whom they did not originally require personal exposure. There being no evidence that Appellees induced or misled the Appellants into entering into the lease because of their individual, personal liability, all to Appellants' detriment, no individual, personal liability exists. Kitchell Corporation v. Hermansen, 8 Ariz.App.2d 424, 446 P.2d 934 (1968). Having made their contract it is not for this Court to rewrite it and provide new and additional liabilities of parties who had originally limited their liability.

"As between parties standing on the same footing, courts do not inquire whether they contracted wisely or foolishly." Hansen v. Yturria, 48 S.W. 795 (Tex.Civ.App.1898, no writ). "In the absence of fraud, accident, or mistake, it is conclusively presumed that the parties to the contract were familiar with and understood its terms." Jones v. Winter, 215 S.W.2d 654 (Tex.Civ.App.—Amarillo 1948, writ ref'd n. r. e.). As Chief Justice Brown said in Dorroh-Kelly Mercantile Co. v. Orient Ins. Co., 104 Tex. 199, 135 S.W. 1165 (1911):

"Parties make their own contracts, and it is not within the province of this court to vary their terms in order to protect them from the consequences of their own oversights and failures in nonobservance of obligations assumed."

In concurring, I recognize as does Associate Justice Ward, and as is pointed out by Chief Justice Preslar, that some of the summary judgment affidavits contain conclusions. If proper attack is made, such evidence cannot support a summary judgment. But in the Hidalgo case upon which the dissenting opinion relies, Chief Justice Preslar, when writing in that case for this Court, noted that the appellant in that case did in fact attack "the affidavit of the witness Dempsey as not being made on personal knowledge, containing conclusions, * * *." Hidalgo v. Surety Savings and Loan Association, 481 S.W.2d 208 (Tex.Civ.App.—El Paso), rev'd 487 S.W.2d 702

(Tex.1972). Such is not the case now before this Court. No attack is made on the sufficiency of the evidence nor the fact that the affidavits contain conclusions. As shown by Justice Ward's opinion, it was Appellants' motion which brought about the severance of the cause of action as to the personal liability of the limited partners, and both sides recognizing that no fact issue existed, each moved for summary judgment. Obviously, the parties want the issue decided on the merits in a case of first impression. Thus, no attack is made on the proof in the trial Court, but only on the legal basis of the results reached. Since Appellants do not question the sufficiency of the evidence, neither should this Court. Accordingly I concur.