327 P.2d 998

**ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation, and John J. Hay, Appellants,**

**v.**

**Ed LAMB, Appellee.**

No. 6333.

Supreme Court of Arizona.

July 15, 1958.

Snell & Wilmer, and Frederick K. Steiner, Jr., Phoenix, for appellant Arizona Public Service Co.

Rawlins, Davis, Christy, Kleinman & Burrus, and Chester J. Peterson, Phoenix, for appellant John J. Hay.

Scott, Cavness & Yankee, Phoenix, for appellee.

WINDES, Justice.

One Joe Lamb was the owner of a section of farming land. He leased 160 acres to his brother Ed Lamb, the appellee herein. The water supply for irrigating this latter acreage consisted of wells located on Joe's property not covered by the lease and the lease provided that Joe should put the pumping facilities in first class condition and that Ed should pay for all electricity which he used on his leased premises. The lessor and lessee, desiring to raise 400 acres of cotton, jointly applied to and secured from Best Cotton Company a crop loan to finance the growing. When the crop was grown and sold through Best Cotton Co., it had on hand after paying the loan the sum of $10,249.71 belonging to Ed and Joe. Ed filed suit against Best Cotton Co. for his share. The company answered and filed counterclaim setting forth that Joe had assigned $2,109.06 of his funds with Best Cotton Co. to Hanson Pump & Machine Works; that Arizona Public Service Company, one of the appellants herein, had served a writ of garnishment for a claimed indebtedness from Joe in the sum of $3,918.93; that it claimed no interest in the fund and asked that the respective claimants be required to interplead.

All claimants except Joe Lamb answered setting forth their respective claims to the fund. Joe had taken bankruptcy, had been served with the interpleader action by publication and defaulted. By stipulation Ed was paid $5,000 from the fund. There-

after Hanson Pump & Machine Co. assigned its claim to the appellant John Hay and he was substituted as a party. Best Cotton Co. paid $5,249.71 into court and at pretrial hearing the trial court ordered the clerk to pay it from the fund deposited the sum of $509.65 for its attorney fees and costs. The lower court after trial rendered final judgment distributing the fund as follows: To Best Cotton Co., $509.65 for attorney fees and costs; to Ed Lamb, $3,239.64 plus $83.30 for his costs; to appellant John Hay $1,417.12; and adjudged Arizona Public Service Company take nothing. By minute order the court thereafter amended the judgment vacating the item of $83.30 to Ed and changing the amount due Hay to $1,500.42. Arizona Public Service Company and Hay separately appeal.

Concerning the appeal of Public Service the evidence is that Joe Lamb ordered the power which was used by him and Ed in connection with their respective farming operations for the season. The pump which furnished Ed's water was located on land being farmed by Joe. In the lease it was agreed between Joe and Ed that the latter pay for whatever electricity Ed used in his farming operations. It is clear that Joe contracted for the power which was to be used on both operations, and prior to this interpleader action Public Service sued Joe for the balance of the unpaid portion of its bill and ran a writ of garnishment against Best Cotton Co. for

what it owed Joe. We think it is clear that it was understood that Joe was obligated to Public Service for the entire electrical bill and Ed was to reimburse Joe for whatever he (Ed) used in his farming operations under the lease.

In order to secure financing from Best Cotton Company the brothers were required to give a joint note and crop mortgage covering the crops grown by each of them. So far as they and Best Cotton Company were concerned as to Ed and Joe's production expenses, it was a joint account. The total power bill was $11,841.93. Of this amount there was paid from the joint account during the farming operations $7,923, leaving a balance due the power company of $3,918.93. The evidence showed that Ed used in raising his crop $3,107.83 worth of electricity and Joe used the balance of the total, being $8,734.10. The brothers settled their account between themselves and in this settlement Ed was charged and Joe given credit for $3,107.83. Ed thereby paid Joe for the electricity he used in accordance with the agreement in the lease.

The position of the power company is that either Ed owes it the entire balance of the electrical bill in the sum of $3,918.93 as a personal obligation or he owes the sum of $3,107.83 for the electricity he used. The basis of the contention that Ed is personally liable for the entire bill is that by entering into a joint

financing deal with Best Cotton Co. the brothers became joint adventurers and each is liable for all debts incurred in their respective farming operations. We cannot agree with this contention. We have said a joint adventure is a special combination of two or more persons where in some special venture a profit is jointly sought, Ruby v. United Sugar Companies, S.A., 56 Ariz. 535, 109 P.2d 845, and that under all the authorities a share in the profits is necessary to create such a venture, Estrella v. Suarez, 60 Ariz. 187, 134 P.2d 167. There was no joint operation of their respective farms. Each was farming independently. There was no agreement whereby they were to share jointly either in profits or losses. There was no joint right of control in the farming operations. For the power company to hold Ed personally for any portion of the electrical bill, it must be on the theory that because they jointly secured a loan from Best Cotton Co. and jointly drew thereon for their respective separate expenses of operation they thereby rendered each other jointly and severally liable for all debts incurred by either. To accomplish this result Arizona Public Service would label their separate operations as a joint adventure when it bears none of the recognized earmarks of a joint enterprise as defined by the authorities. 48 C.J.S. Joint Adventures § 1, page 801; 30 Am.Jur., Joint Adventures, section 2, page 939. Ed agreed in his lease to pay Joe for the power he (Ed) used in his separate operation. This he did when he settled with Joe by charging himself with $3,107.83, the amount of electricity he used. He owes the power company nothing and the trial court correctly so ruled.

■ In rendering its judgment allowing Ed Lamb $3,239.64 of the fund, he was charged with having withdrawn for picking $6,856.75. The correctness of this figure is questioned by appellant Hay, his contention being that the records and legitimate evidence show Ed received unquestionably more than this amount and consequently the amount Ed is entitled to from the fund should be reduced. Prior to this litigation the two brothers had a settlement between themselves. In this settlement they agreed that this was a proper figure. Witness Dennis prepared an account adopting this figure. When this account was offered in evidence, objection was made on the ground of inadequate foundation. Dennis then testified he had examined the exhibits in evidence including the gin weight receipts which represented the amount of cotton Ed had delivered to the gin. These total 231,245 pounds of seed cotton. Ed verified this total figure and testified that 159,870 pounds were hand picked at $3.35 per hundred and 71,375 pounds machine picked at $2.75 per hundred. There was also introduced in evidence the gin tickets which purport to represent the cotton ginned for Ed. The best we can glean from these tickets is that

they show total seed cotton of 232,235 pounds. There was also introduced into evidence what purports to be a copy from the gin records showing that Ed had drawn for picking $9,598.48 and Joe had drawn $4,625.51. Dennis testified that from consideration of the records in evidence and from the information available Ed's acreage produced 239,155 pounds and Joe's produced 285,350 pounds of seed cotton.

The problem for solution by both the accountant and the court was to determine the proper amount Ed should be charged with having drawn from the fund for picking his own cotton. It being impossible to reconcile the above figures and arrive at an exact solution, the accountant recognized that since Joe produced 54.4 percent and Ed 45.6 percent of the total cotton, it could not possibly be correct to charge Ed with over twice as much picking withdrawals. Clearly, on its face this could not be correct. The accountant calculated a charge to each on a prorata percentage basis and came up with a figure of approximately $6,400 to be allocated to Ed. Since the brothers had agreed between themselves that Ed's portion should be $6,856.75, he used this latter figure, and the court accepted it. In corroboration of the correctness of this figure Ed testified that when Joe and he were settling their accounts, they went to the gin and were given this figure as representing Ed's withdrawals for picking his personal cotton. Ed testi-

fied that he picked about 50 bales of Joe's cotton and also that he paid from other funds not supplied by Best Co. possibly $500 for picking a portion of his cotton. We think from all this confusion, there is sufficient evidence to justify the accountant and the court in accepting the figure of $6,856.75 as the correct amount to charge Ed as withdrawals for picking the cotton he produced.

In disposing of the $509.65 which was allowed Best Cotton Co. for having to interplead the respective claimants, the court deducted the entire amount from the portion of the fund that was allowed appellant Hay as the assignee of Joe's portion. The effect of this was to give a priority to Ed's claim. A complaint interpleading claimants to a fund by one not interested in the disposition thereof is equitable in nature. 30 Am.Jur., Interpleader, section 3; Schwartz v. Durham, 52 Ariz. 256, 80 P.2d 453. Ed proved a claim in the sum of $3,239.64. Appellant Hay as assignee of Joe proved the sum of $2,010.07. There is nothing in this case that would warrant either claimant to gain priority over the other. Under such circumstances when the fund available is insufficient to satisfy all claimants, equity requires that each share therein on a prorata basis. Burchfield v. Bevins, 10 Cir., 242 F.2d 239. After deducting the item for attorney fees and costs in the sum of $509.65 there remains available $4,740.06

which is inadequate to satisfy the two proven claims. Ed's claim is 61.7 percent and Joe's is 38.3 percent of the aggregate proven claims. Equity demands, therefore, that these two successful claims share in the available fund in this proportion with the result that of the $4,740.06 Ed is entitled to $2,924.62 and appellant Hay is entitled to $1,815.44.

It is ordered, therefore, that the judgment be amended allowing appellee Ed Lamb $2,924.62 and appellant John Hay the sum of $1,815.44. As amended the judgment will be affirmed, with each party to bear their own costs on appeal.

UDALL, C. J., and PHELPS, STRUCK-MEYER and JOHNSON, JJ., concur.