488 P.2d 196

**L. M. WHITE CONTRACTING COMPANY, a corporation, and Fidelity & Deposit Company of Maryland, a corporation, Appellants and Cross-Appellees,**

v.

**ST. JOSEPH STRUCTURAL STEEL COMPANY, a corporation, Appellee and Cross-Appellant.**

**No. 2 CA–CIV 903.**

Court of Appeals of Arizona, Division 2.

Aug. 31, 1971.

Rehearing Denied Oct. 13, 1971.

Review Denied Nov. 4, 1971.

Bilby, Thompson, Shoenhair & Warnock, P. C., by Michael A. Lacagnina, Tucson, for appellants.

Robertson & Fickett, P. C., by Burton J. Kinerk, Tucson, for appellee.

HOWARD, Judge.

The principal issue involved in this case is the ability of a foreign corporation to sue in the State of Arizona without qualifying under A.R.S. § 10–481. The facts in the light most favorable to upholding the judgment of the trial court are as follows:

Appellant L. M. White Contracting Company, a defendant below, hereinafter referred to as White, on June 24, 1966, entered into a formal contract with the State of Arizona to construct a portion of the Interstate Highway system designated as I–10–6(38) 361, Benson-Steins Pass Highway. Prior to this time on June 14, 1966, appellant White had submitted to it a quotation from Kelly Steel Company, hereinafter referred to as Kelly, wherein it agreed to furnish, fabricate and erect according to plans and specifications two plate girder bridges. The quotation, signed by Robert Kelly, the president of Kelly, stated: "This is a joint project between Kelly Steel Company and St. Joseph Structural Steel." The subcontract that was entered into between White and Kelly was signed by the general manager of Kelly on behalf of St. Joseph Structural Steel. Kelly was an Arizona corporation whose business was the erection of steel components on construction sites in the State of Arizona. Although Kelly had made arrangements with St. Joseph Structural Steel, the plaintiff below and hereinafter referred to as St. Joseph, that it would secure its structural steel for the jobs it bid on from St. Joseph, Kelly had no authority from St. Joseph to insert on its June 14th proposal with White that the proposal was a joint project between Kelly Steel and St. Joseph nor did Kelly have authority to sign the subcontract on behalf of St. Joseph.

There is no question that St. Joseph did fabricate the steel for the bridges and shipped it to Arizona. There is also no question that St. Joseph provided no labor nor was it in any way connected with the erection of the bridge and its steel components, this being done entirely by Kelly. The record is further undisputed that White paid the subcontractor Kelly in full which payment included the sums of money owed to St. Joseph, but that Kelly failed to pay St. Joseph for the steel supplied due to dissipation of funds and a lien on its bank account by the federal government.

With the consent of the State of Arizona, St. Joseph brought suit against appellant White on the performance bond which was executed in connection with the contract between the State and White.

Prior to trial it was stipulated that should the plaintiff be successful in its claim to damages upon the complaint, the plaintiff's damages would be in the sum of $65,047.99.

The trial court entered judgment in favor of St. Joseph and against White and appellant Fidelity and Deposit Company of Maryland in the sum of $55,047.99 plus costs and attorneys' fees of $10,000.

Appellants present the following questions for review. (1) Did the plaintiff transact business in Arizona without complying with the requirements of A.R.S. § 10–481 and did its noncompliance make every act including the filing of this lawsuit void? (2) Were plaintiff and Kelly engaged in the joint project? (3) Was the business conducted by plaintiff in the State of Arizona protected by the Interstate Commerce clause? (4) Did L. M. White perform according to the terms of a subcontract with Kelly and plaintiff as joint adventurers?

The appellee has also filed a cross-appeal in this action claiming the court erred in refusing to allow it prejudgment interest in the amount of 6% upon all amounts that became due and payable for the materials it provided.

## TRANSACTING BUSINESS IN THE STATE

Before transacting business in the State of Arizona, a corporation is required by A.R.S. § 10–481 to file with the Corporation Commission a certified copy of its articles of incorporation and all amendments together with a certificate in good standing from the state in which the corporation was organized, appoint a statutory agent in each county in which it will carry on business, file with the Corporation Commission an irrevocable consent to service of pleadings or process and pay the fees prescribed by law.

It is uncontroverted that St. Joseph has not complied in any respect with § 10–481. A.R.S. § 10–482 states:

"No foreign corporation shall transact business in this state until it has complied with the requirements of § 10–481, and every act done prior thereto is void."

The failure to comply with A.R.S. § 10–481 has since early times in the history of this state been held to be a valid defense.

National Union Indemnity Co. v. Bruce Bros., 44 Ariz. 454, 38 P.2d 648 (1934); Western Loan & Building Co. v. Elias Morris & Sons Co., 43 Ariz. 88, 29 P.2d 137 (1934); Babbitt v. Field, 6 Ariz. 6, 52 P. 775 (1898).

To substantiate the claim that St. Joseph was doing business within the State of Arizona within the meaning of A.R.S. § 10–481, White introduced in evidence two subcontracts.[1] These subcontracts also dealt with the construction of the interstate highway system in Arizona. The first subcontract was made on the 11th day of May, 1965 by and between Vinnell Corporation as the contractor and St. Joseph and Kelly as the subcontractor. According to the terms of the contract the subcontractor agreed to furnish, unload and erect structural steel complete in place. The second contract entered into on the 26th day of July, 1966, was by and between Kelly and St. Joseph as the subcontractor and Fisher Contracting Company which was the contractor. As in the contract with Vinnell, the subcontractor in the contract of 26 July 1966, agreed to furnish, fabricate and erect all structural steel. At the trial, Mr. Jack Knight, the vice president and comptroller of St. Joseph, explained that the only reason St. Joseph appeared as a subcontractor on these two contracts was at the insistence of the original contractor. He explained that they did nothing more than ship the steel for the projects involved, at no time took part in the erection of the steel at the bridge sites in Arizona, nor anywhere else. He further stated that St. Joseph did business in several states, that its sole business was the furnishing to others of prefabricated steel units, and that it never was in the contracting business.

Testimony showed that in the job in question and the other jobs previously mentioned in the State of Arizona, St. Joseph did not share in the profits or losses from the job with Kelly but only received or was

---

1. There was also testimony about a third contract similar to the written ones. There was no evidence that White knew of these contracts or relied upon them in entering into the subcontract with Kelly.

to receive from Kelly the amount that it quoted to Kelly for the furnishing of the fabricated steel.

In the case of Babbitt v. Field, supra, it was held that the doing of a single act of business in the territory by a foreign corporation does not constitute the carrying on of business within the reasonable construction of the precursor of our present statutes.

█ To come within the statute [A.R.S. § 10–482] a corporation must be engaged in an enterprise of some permanence and durability and must transact within the state some substantial part of its ordinary business and not merely a single act. Monaghan & Murphy Bank v. Davis, 27 Ariz. 532, 234 P. 818 (1925).

█ In Rochester Capital Leasing Corp. v. Sprague, 13 Ariz.App. 77, 474 P.2d 201 (1970), the court pointed out several factors bearing on the issues of this case: (1) The question of what constitutes the "transaction of business" within a state cannot be considered in the abstract, but must rather be considered in relation to the particular statute or object of inquiry before the court, (2) generally courts require a much stronger showing of in-state activities in order to invoke the sanctions of corporate qualification statutes than is required to subject the foreign corporation to local taxation or to state court jurisdiction through service of process, (3) whenever there is a doubt as to the validity of the contract objected to, that doubt should be resolved in favor of its validity. In isolating the transaction in question, and not considering the other three contracts previously mentioned, it is clear that one who fabricates goods in a foreign state, shipping them for use or sale in the State of Arizona, is not within the purview of the statute. Cf. Ranch House Supply Corp. v. Van Slyke, 91 Ariz. 177, 370 P.2d 661 (1962); Reed v. Real Detective Publishing Co., 63 Ariz. 294, 162 P.2d 133 (1945). The question then resolves itself down into whether or not St. Joseph was doing business in the State of Arizona by entering into three contracts wherein it agreed as a subcontractor with Kelly to erect the prefabricated steel in this state. We think not. St. Joseph was not in the business of erecting the steel structures that it prefabricated. It did nothing more than ship them out of the State of Missouri. St. Joseph did not have a contractor's license in the State of Missouri or any other state in the Union. St. Joseph never had any agents in the State of Arizona and did no acts whatsoever in the State of Arizona. The record is devoid of any evidence that Kelly was acting as St. Joseph's agent in the erection of the bridge. At most, the three previous contracts constitute an agreement on the part of St. Joseph to sell the prefabricated structural steel to the general contractor. In determining whether a foreign corporation is "doing business" in the state, the test is not what *could have been done* under a contract but what is *actually* done. Filmakers Releasing Organization v. Realart Pictures, 374 S.W.2d 535 (Mo.App. 1964). Neither the past or present transactions constitute the transacting of business within the meaning of A.R.S. § 10–482.

## JOINT VENTURE

██ White claims that Kelly and St. Joseph were joint venturers and therefore payment by White to Kelly constituted payment to St. Joseph. In West v. Soto, 85 Ariz. 255, 336 P.2d 153 (1959) the elements of a joint venture were set forth. They are: (1) A contract, (2) a common purpose, (3) a community of interest, and (4) an equal right of control.

In Arizona Public Service Co. v. Lamb, 84 Ariz. 314, 327 P.2d 998 (1958) the court stated:

"* * * We have said a joint adventure is a special combination of two or more persons where in some special venture a profit is jointly sought, Ruby v. United Sugar Companies, S.A., 56 Ariz. 535, 109 P.2d 845, and that under all the authorities a share in the profits

is necessary to create such a venture, Estrella v. Suarez, 60 Ariz. 187, 134 P.2d 167. * * *" 84 Ariz. at 317, 327 P.2d at 1000.

At the trial, Mr. Knight testified as follows:

"Q You have indicated that in reference to a given job specifications and plans in order to render a proposal to supply the steel that we have indicated?

A Correct.

Q And that proposal was rendered directly to Kelly Steel?

A Yes, over the telephone.

Q Would that be basically the same day the job was bid to your understanding?

A It probably would be prior to the date of the letting.

Q Did you at that time, did your company and from your knowledge, know the total bid price that was submitted by Kelly Steel Company?

A No.

Q Would you outline to us what your understanding or your oral agreement with Kelly Steel Company was as concerns the furnishing and fabrication of this steel to the job site?

A We would merely offer to sell him the steel at X number of dollars. From then on we had no concern. He would, it is my understanding, then figure his cost as far as unloading and erection are concerned and quote the contractor.

Q As concerns your understanding and agreement with Kelly Steel Company, was there any prohibition which would have disallowed Kelly Steel Company from using any other supplier of this steel?

A He could have just as well gotten prices from our competitors and maybe have used them as well as us, instead of us I should say.

Q Was there any prohibition from your supplying the steel directly to the job site, say, for the general contractor?

A No. In this particular instance had the L. M. White Company wanted to erect their own steel, as some contractors do, and had they called us we would have quoted them the same price we quoted Mr. Kelly.

Q Would the price have been any different to any other erector?

A No. This was our selling price. We didn't care to whom we sold it.

Q Did you in any way consult with or give advice as concerns the total bid price submitted by Kelly Steel Company to L. M. White Construction Company?

A No.

Q Except for providing for the proposals?

A We just quoted him a price for the fabricated steel."

## THE CROSS APPEAL

Appellee contends the court erred when it failed to grant it prejudgment interest in the amount of 6% upon all amounts from the time that they became due and payable.

A.R.S. § 44–1201, as amended, provides:

"A. Interest for any legal indebtedness shall be at the rate of six dollars upon one hundred dollars for a year, unless a different rate is contracted for in writing."

In the case of Betz v. Goff, 5 Ariz.App. 404, 427 P.2d 538 (1967), we held that the foregoing statute authorized prejudgment interest on liquidated claims. Liquidated claims include indebtedness which is capable of ascertainment by reference to agreement or simple computation. Betz v. Goff, supra; Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co., et al., 14 Ariz.App. 486, 484 P.2d 639 (1971).

Appellants do not contend that the claim is unliquidated, but rather assert that the allowance of interest as an element

of damages is discretionary and that the judge did not abuse her discretion when she failed to grant prejudgment interest. While there are cases which agree with appellants' contention,[2] we do not believe this to be the law in the State of Arizona, but rather agree with the view expressed by Division One of this court in its recent opinion of Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co., supra, wherein the court held that prejudgment interest on a liquidated claim is a matter of right and not a matter of discretion. Appellants strongly urge that we adopt the discretionary rule in this case since White actually made payment to Kelly. We do not believe that this fact should relieve White of the payment of interest any more so than White should be relieved of paying the principal sum because it paid this sum to its subcontractor. It is clearly the rule that payment to a subcontractor does not relieve the general contractor from liability under payment bond. Mullan Contracting Co. v. International Business Machines, Corp., 220 Md. 248, 151 A.2d 906 (1959); United States v. Starrett Bros. & Eken, Inc., 18 F.Supp. 671 (E.D.Pa.1937); Dominion Culvert & Metal Corp. v. United States Fidelity & Guarantee Co., 238 S.C. 452, 120 S.E.2d 518, 92 A.L.R.2d 1244 (1961); Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206, (1917). As is stated in the case of Dominion Culvert & Metal Corp. v. United States Fidelity & Guarantee Co., supra:

"* * * This rule is based upon the obligation assumed by the contractor and his surety, under their contracts with the owner, to those furnishing labor and materials for the construction. His liability for materials and labor is not based upon discharge of his obligation to the subcontractor, but arises under his contract with the School District to pay for all labor and materials, whether furnished directly to him or to a subcontractor. * * *" 120 S.E.2d at 521.

The only question that remains is when the period for computing interest commenced. It has been held that liability on a performance bond commences when demand is made upon the surety for payment. Illinois Surety Co. v. John Davis Co., supra; Moyer v. United States, 206 F.2d 57 (4th Cir. 1953). The rule in Arizona, however, is to the contrary. In Webb v. Crane Co., 52 Ariz. 299, 80 P.2d 698 (1938), our Supreme Court held that interest should be calculated from the date the sums became due. The contractor is liable for interest even though he has paid all sums due to his subcontractor. Mullan Contracting Co. v. International Business Machines Corp., supra; Illinois Surety Co. v. John Davis Co., supra; Moyer v. United States, supra. The evidence shows in this case that cross-appellant is entitled to interest from the date the principal sums became due until the date of judgment in the sum of $9,727.64.

For the foregoing reasons, the judgment of the trial court is affirmed in all respects except as to disallowance of prejudgment interest and the cause is remanded to the trial court, which court is ordered to enter judgment in favor of appellee for interest in the sum of $9,727.64.

KRUCKER, C. J., and HATHAWAY, J., concur.

2. Fanning & Doorley Construction Co. v. Gleigy Chemical Corp. 305 F.Supp. 650 (D.R.I.1969); Wells Laundry & Linen Supply Co. v. Acme Fast Freight, 138 Conn. 458, 85 A.2d 907 (1952); Campbell v. Rockefeller, 134 Conn. 585, 59 A. 2d 524 (1948); Namerow v. Colangelo, 6 Conn.Cir. 9, 262 A.2d 187 (1969); Damasiotes v. Dumas, 97 N.H. 402, 89 A.2d 756 (1952).