517 P.2d 1110

**JAMES WELLER, INC., an Arizona corporation, Appellant,**

v.

**M. Leslie HANSEN and Gloria Hansen, his wife, Appellees.**

**No. 1 CA–CIV 1924.**

Court of Appeals of Arizona,
Division 1,
Department A.
Dec. 28, 1973.

---

Barry Allen Reiss, Phoenix, for appellant.

Roush, Mori, Welch & Steiner, by Richard A. Steiner, Phoenix, for appellees.

## OPINION

STEVENS, Judge.

The issues presented to this Court are the adequacy of a notice and claim of lien and the adequacy of the service thereof.

The persons or corporations essential to this litigation are: the plaintiffs, M. Leslie Hansen and Gloria Hansen, his wife, and since all of the business transactions were conducted by Mr. Hansen, the plaintiffs will be referred to herein as Hansen; James Weller, Inc., a corporation, and since all of the business was conducted by Mr. Weller, this corporation will be referred to herein as Weller; and the Cherokee Construction Company, a corporation, herein referred to as Cherokee.

No one disputes: That there are two adjoining subdivisions, the recorded plats thereof designating them as Moon Valley and Moon Valley II; that the lots in the two subdivisions are consecutively numbered and there are no duplicate numbers; that the correct legal description of the lot in question is Lot 608 Moon Valley II, sometimes referred to herein as the lot in question; or that the correct street address thereof is 14201 North Coral Gables Drive.

Hansen, a realtor by profession, as plaintiff, filed a suit to quiet the title to the lot in question naming as defendants two separate lien claimants, one of them being Weller. The defendant lien claimants counterclaimed to foreclose their lien claims. The trial court, after a timely request, entered findings of fact and conclusions of law. The judgment quieted title in Hansen as to both lien claimants and only Weller appealed.

Rule 52(a), Rules of Civil Procedure, 16 A.R.S. states, in part, that on appeal "[f]indings of fact shall not be set aside unless clearly erroneous * * *." There are numerous appellate opinions recognizing this rule.

At all times material to this litigation the applicable section of the Arizona Revised Statutes then read, in part, as follows:

"33–993. PROCEDURE TO PERFECT LIEN; NOTICE AND CLAIM OF LIEN; SERVICE; RECORDING

"In order to impress and secure the lien * * * every * * * person claiming the benefits of this article * * * shall make duplicate copies of a notice and claim of lien and record one copy with the county recorder of the county in which the property or some part thereof is located, and within a reasonable time thereafter serve the remaining copy upon the owner of the building, structure or improvement, if he can be found within the county. The notice and claim of lien * * * shall contain:

"1. A description of the lands and improvements to be charged with a lien, sufficient for identification.

"2. The name of the owner or reputed owner of the property concerned, if known, and the name of the person by whom the lienor was employed or to whom he furnished materials.

"3. A statement of the terms, time given and conditions of the contract, if it is oral, or a copy of the contract, if written.

"4. A statement of the lienor's demand, after deducting just credits and offsets."

## CHRONOLOGY

We deem it to be appropriate to set forth an outline of the chronology. Certain of the matters set forth in this section of the opinion will be hereinafter discussed.

Prior to 13 November 1969 Cherokee owned the lot in question. On that date two instruments were signed. One was a

construction contract and the other was a sales agreement.[1]

On 18 December 1969 four instruments were recorded as consecutive recordings. These were: a deed from Cherokee to Hansen; a mortgage wherein Hansen was the mortgagor and First Federal Savings and Loan Association of Phoenix was the mortgagee; a building and loan agreement between Hansen and First Federal providing for progress payments and reciting the sum of $35,292.20; and a deed from Hansen to Cherokee. Neither deed is in evidence, but the sequence was agreed upon. Each of these instruments described the lot in question as follows: "Lot Six Hundred Eight · (608) Moon Valley II * * *." First Federal is not a party to the law suit nor is its mortgage affected thereby.

Shortly thereafter Cherokee started construction and by oral contract Weller undertook the dry wall and painting of the residence which was being built. There were written memoranda supplementing the oral contract. The City of Phoenix issued its building permit on 22 December 1969.

The trial court found that the construction was completed on 29 April 1970.

By a deed recorded on 7 May 1970 Cherokee again deeded to Hansen.

Weller recorded a notice and claim of lien on 8 June 1970 naming Cherokee as "the owner and/or reputed owner." Cherokee was served on 11 June 1970.

It was not until approximately 1 September 1970 that Hansen was personally served with a copy of the notice and claim of lien. The Hansen quiet title action was filed on 16 September 1970.

## SUFFICIENCY OF THE DESCRIPTION

A.R.S. § 33–993(1) requires "a description of the lands * * * sufficient for identification." The lien described the lot in question as "Lot 608, Moon Valley,

14201 N. Coral Gables Drive, Phoenix, Arizona." The trial court's finding of fact number seven is as follows:

"7. Weller's Lien did not accurately describe the legal description of the property involved although it did give a proper street address."

The trial court's conclusion of law number two states:

"2. Weller's Notice and Claim of Lien was improper in form and not calculated to give notice."

In a construction contract dated 13 November 1969 the lot in question was described as "Lot 608 Moon Valley, Maricopa County, also known as 14201 North Coral Gables Drive * * *." The sales agreement, executed the same date, refers to the correct street address and specifies "Legal Lot 608 MV II." It is also interesting to note that in these two documents the contracting parties were Cherokee and "M. Leslie Hansen Realty Company by M. Leslie Hansen, President." It is further interesting to note that at the trial Hansen's attorney questioned him with reference to "Lot 608 Moon Valley Estates II", which caused Hansen no confusion and the same description appears in Hansen's answering brief in this Court.

Hansen testified that after the 7 May 1970 recording of the Cherokee deed to Hansen he did not check records in the office of the County Recorder and relied upon verbal communications with a title company as to the presence of lien claims, that in this manner he became aware of several liens which he paid, and that he was not informed as to the Weller lien claim. No title company representative was called as a witness. It is difficult for this Court to see how one posting title company books to the recorded instruments would be misled under these circumstances.

■ ■ While it is true, as stated in finding number seven, that the lien claim "did not accurately describe the legal de-

---

1. The trial court found that these had been recorded. Exceptions to that finding were overruled. The record does not sustain that finding.

scription", the statute does not so require. We expressly disapprove conclusion of law number two.

The instruments Weller received from Cherokee in relation to his work described the lot in question as "Lot 608 MV", and as "Moon Valley Lot No. 608." Weller, at the time of the preparation of his lien, was not required at his peril to obtain the completely accurate legal description. A.R.S. § 33–993(1). Had Hansen personally received the notice and claim of lien shortly following the recording he could not be heard to say he was misled.

## OTHER ASPECTS OF THE CONTENT OF LIEN

In support of the judgment, Hansen urges that the notice and claim of lien was not limited in its content to a single lot but included a total of six lots. Each lot and its improvement was the subject of a separate contract with Cherokee. Each lot was separately described by subdivision reference and by street address. As to each the necessary specifics were set forth in separate paragraphs. A single instrument affecting the title to real property often contains more than one legal description. We have not been cited any authority which would invalidate this lien because of its multiple character.

## THE HANSEN–CHEROKEE RELATIONSHIP

Weller urges that the Hansen-Cherokee relationship was a joint venture and that the service of a copy of the notice and claim of lien on joint venturer Cherokee three days after recording was service on Hansen. Hansen disputes the joint venture relationship and the trial court agreed in a conclusion of law.

"1. There was no Joint Venture (nor partnership) between Cherokee and plaintiffs."

This necessitates a study of the 13 November 1969 construction contract. We do not quote the agreement in toto. Some of the salient provisions are summarized.

The contract recites that Cherokee was the owner of the lot in question and that upon that lot "*they* desire to have a single family residence constructed for sale to some third party." (Emphasis added). This was to be constructed for Hansen at Cherokee's actual cost not exceeding $41,652.00 which included $3,872.50 paid by Hansen to Cherokee as the value of the lot. It was Cherokee's obligation to construct as per plans and specifications even though the cost exceeded the financing and it was Hansen's obligation to provide the financing up to the stated maximum.

Hansen had the privilege of change orders which could add to the cost. Cherokee was obligated to keep accurate records which were subject to Hansen's inspection.

When the house was completed it was to be sold by Hansen for a mutually agreed upon price, each to receive one-half of the profits.

Cherokee had full responsibility for the construction. The agreement provided that the work would be performed by Cherokee " * * * as an independent contractor at its sole risk, cost and expense * * *."

The question now to be answered is whether this agreement created a joint venture. We hold that it did.

Joint ventures in Arizona can be social or business. The issues may arise between the parties or in the relationship of the parties to third persons. This issue may arise in tort cases as in automobile accidents or in business relationships as here. While the intent of the parties is essential as between the parties, where there is a clear and unambiguous contract, as here, the contract controls as to Weller, a third party.

West v. Soto, 85 Ariz. 255, 336 P.2d 153 (1959), involves a third-party tort claim and the question was whether West, a co-defendant and passenger in the car, was liable to the injured party as a joint venturer. There was no express agreement and the Court examined the facts determining the absence of a joint venture and the absence of West's liability. The Court

set forth certain guidelines. We quote extensively from West, supra.

" * * * The elements of a joint venture are (1) a contract, (2) a common purpose, (3) a community of interest, and (4) an equal right of control. We have necessarily discussed some of these elements in considering the preceding question. Joint adventures are applicable to both business and social purposes. They are in the nature of a partnership. Each of the parties thereto is the agent of the others. It follows that each of the others is likewise a principal so that the act of one is the act of all.

"A joint adventure whether it be for business or social purposes must rest upon an agreement, either express or implied between the parties thereto. Whatever the common purpose or community of interest may be, it must appear as a part of the agreement either expressly or by necessary implication, that each of the parties to such joint adventure has authority to act for all in respect to the control of the means or agencies employed to execute such common purpose." 85 Ariz. at 261–262, 336 P.2d at 157.

Mercer v. Vinson, 85 Ariz. 280, 336 P.2d 854 (1959), relates to a tort claim against persons with an informal business association. The Supreme Court concluded that under the circumstances there was a fact question. Our Supreme Court stated:

" * * * We have pointed out before, and have recently stressed in West v. Soto, 85 Ariz. 255, 336 P.2d 153, the elements of a joint adventure, and stated that it is in the nature of a partnership; that each of the parties thereto is the agent of the other and each is the principal, so that the act of one is the act of all. We also said that where there is a question of a joint adventure, each case must be decided upon its own facts, and unless the court can say as a matter of law that the parties were engaged in a joint adventure, the question must be submitted as a question of fact to the jury.

\* \* \* \* \* \*

"The intent of the contracting parties to form a partnership is always an essential element of a partnership relation *as between the parties themselves*, but as to third parties, the relation will be determined from the facts rather than the conclusions of the co-partners as to the nature of their business relationship.

\* \* \* \* \* \*

"Vinson's testimony when examined in the light of the conceded facts could lead the jury to infer that the relationship of Rime and Vinson was neither that of principal and agent nor of landlord and tenant, but that of two individuals associating themselves together and pooling their mutual resources for their mutual betterment, a profit. Both assumed the risk of no profit in the event the enterprise was unsuccessful. We do not think that it is impossible for reasonable men to come to an honest conclusion that the facts as here outlined establish a joint enterprise or adventure." (Emphasis theirs). 85 Ariz. at 286, 287, 288, 336 P.2d at 858, 859.

Among the Arizona cases discussing joint ventures we find: A business joint venture as between the parties in Ruby v. United Sugar Companies, S.A., 56 Ariz. 535, 109 P.2d 845 (1941); an absence of a business joint venture in Estrella v. Suarez, 60 Ariz. 187, 134 P.2d 167 (1943); an absence of a farming joint venture in Arizona Public Service Company v. Lamb, 84 Ariz. 314, 327 P.2d 998 (1958); a question of tort liability to a third person arising out of a business association in Tafoya v. Trisler, 8 Ariz.App. 250, 445 P.2d 452 (1968); a joint venture between parties to an oral business contract as between the parties in L. M. White Contracting Company v. Tucson Rock and Sand Company, 11 Ariz.App. 540, 466 P.2d 413 (1970); an oral joint venture in a business relationship and liability to a third party in Muccilli v.

Huff's Boys' Store, Inc., 12 Ariz.App. 584, 473 P.2d 786 (1970); the absence of a joint venture between a materials supplier and a subcontractor in L. M. White Contracting Company v. St. Joseph Structural Steel Company, 15 Ariz.App. 260, 488 P.2d 196 (1971); and an attempt to assert a joint venture to collect a commission in Helfenbein v. Barae Investment Co. Inc., 19 Ariz.App. 436, 508 P.2d 101 (1973).

Applying the four-pronged test set forth in West, supra, there was a contract, there was a common purpose and there was a community of interest. Was there an equal right of control? We approve and adopt the following statement from 46 Am.Jur.2d, Joint Ventures, § 42, page 61.

"The requisite of equality in joint control does not render impossible the delegation of the duties of management to one of the participants in a joint venture. The rights of the parties with respect to the management and control of the enterprises may be fixed by agreement so as to effectively place control in the hands of one of the joint venturers, and, once having been fixed, may be changed by agreement."

By the contract each delegated to the other the appropriate area of expertise.

■ We hold that as a matter of law under the unambiguous terms of the contract Hansen and Cherokee were engaged in a joint venture, each was a principal, each was the agent of the other and the service of the notice and claim of lien on Cherokee was service upon Hansen.

## DUTY TO NAME THE RECORD OWNER IN THE LIEN

■ In Arizona, a mechanic's lien attaches and begins to accrue at the time the labor is commenced or the materials are furnished. Wylie v. Douglas Lumber Co., 39 Ariz. 511, 8 P.2d 256 (1932); Wahl v. Southwest Savings & Loan Ass'n, 106 Ariz. 381, 476 P.2d 836 (1970); A.R.S. § 33–992.

■ We find that the statutes and case law in Arizona emphasize the in rem na-

ture of the mechanic's lien foreclosure proceedings. No personal or deficiency judgment may be rendered in such a proceeding unless the owner personally contracted for the improvements. Keefer v. Lavender, 74 Ariz. 24, 243 P.2d 457 (1952); Palmer v. Apperson, 70 Ariz. 35, 215 P.2d 1020 (1950); Wylie v. Douglas Lumber, supra.

■ From the commencement of the Weller contract with Cherokee to the date of the completion of the improvement Cherokee held the record title. Thereafter and within the 60 days for the recording of the lien, Cherokee deeded to Hansen. At that time Weller's right to perfect a lien had already matured. Prior to the time of the recording of the lien it might have been good practice for Weller to secure a title search. Under these circumstances, we find no fault with naming Cherokee as the owner or the reputed owner of the land. This is a far different situation than found in Williams v. A. J. Bayless Markets, Inc., 13 Ariz.App. 348, 476 P.2d 869 (1970), wherein Bayless was the owner of the record title prior to the commencement of the improvement and Bayless did not thereafter divest itself of title. In Bayless there was no reasonable basis for naming any other as the owner or reputed owner.

■ It is well established that while there must be strict compliance with the statutory time elements in the recording of notices and claims of lien, the statutes are to be liberally construed to protect those who enhance the value of improvements. Kerr-McGee Oil Industries Inc. v. McCray, 89 Ariz. 307, 361 P.2d 734 (1961); Pioneer Plumbing Supply Company v. Southwest Savings and Loan Association, 102 Ariz. 258, 428 P.2d 115 (1967); and Arizona Gunite Builders Inc. v. Continental Casualty Company, 105 Ariz. 99, 459 P.2d 724 (1969).

■ At the same time the property owner is given an opportunity to protect himself and to investigate the claim. Peterman-Donnelly Engineers & Contractors

**224**

Corporation v. First National Bank of Arizona, Phoenix, 2 Ariz.App. 321, 408 P.2d 841 (1965).

Hansen knew that Cherokee was experiencing financial problems toward the end of construction. He had the contract right to inspect all of Cherokee's records in relation to this construction. He did not avail himself of that privilege yet based upon verbal reports from a title company he learned of and paid some lien claims. He apparently had no contact with Cherokee after the recording of the deed in May 1970.

■ ■ A.R.S. § 33–993 states that the notice and claim of lien shall name "the owner or reputed owner * * * if known." The same section specifies that the "owner" shall be served within a reasonable time after the recording "if he can be found within the county." Thus, where the land which is improved is in one county and the owner is in another county the statute does not require service upon the owner even though his name and address are known. The most vital parts of perfecting a lien are the time elements, the content and the recording.

Holding as we do that there was a joint venture and that service of the lien claim on Cherokee was service on Hansen, we do not decide as to Weller's duty to search the record after he recorded his lien and served Cherokee or as to whether Weller caused Hansen to be personally served as "the owner" "within a reasonable time" after recording.

In a minute entry order dated 1 October 1971 the trial court amended its finding number nine thereby finding that the reasonable value of Weller's work on the premises was the sum of $3,644.50.

This cause is reversed with directions to enter judgment foreclosing the Weller lien in the sum of $3,644.50 together with interest thereon and dismissing the Hansen quiet title action as to Weller.

DONOFRIO, P. J., Department A, and OGG, J., concur.